# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **ST. LAWRENCE SEAWAY PILOTS ASSOCIATION**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES COAST GUARD**, <br><br> Defendant. |

Case No. 17-cv-2203 (CRC)

## MEMORANDUM OPINION

Under federal law, a foreign-owned shipping vessel must use the services of a registered, experienced American or Canadian seaway pilot to navigate the Great Lakes or the St. Lawrence Seaway. The United States Coast Guard is responsible for setting the rates that foreign shipping companies must pay these pilots. To ensure that the rates adequately reimburse pilots associations for the cost of doing business, the Coast Guard must account for their operating expenses. In 2016, the Coast Guard announced that it would no longer recognize legal fees as reimbursable operating expenses if the fees were incurred in litigation against the U.S. government. In 2017, it did just that, excluding $75,049 in legal fees that three pilots associations had incurred in an earlier suit against the Coast Guard.

Those three pilots associations have again sued the Coast Guard. They allege that the 2016 Rule excluding such fees is arbitrary and capricious under the Administrative Procedure Act ("APA") because it was an unacknowledged policy change and was insufficiently justified. The pilots associations thus move for summary judgment, asking the Court to vacate the rule. The Coast Guard and several foreign shipping companies, who have intervened as defendants, oppose that motion, and the Coast Guard cross-moves for summary judgment. Because the

record shows that the Coast Guard neither acknowledged that the 2016 Rule represented a change in policy nor adequately explained its reasoning, the Court will grant summary judgment to Plaintiffs.

**I.  Background**

   A.  Legal Background

The Great Lakes Pilotage Act of 1960, 46 U.S.C. § 9301 *et seq.*, requires foreign ships to employ registered, experienced American or Canadian seaway pilots to navigate American portions of the St. Lawrence Seaway or the Great Lakes.  Id. § 9302.  It requires the Secretary of Homeland Security to set the rates shipping companies must pay for these services.  Id. § 9303(f).  The statute does not prescribe any particular method for calculating appropriate rates, although it instructs the Secretary to "giv[e] consideration to the public interest and the costs of providing the services."  Id.

The Secretary has delegated rate-setting responsibility to the Great Lakes Pilotage Office of the United States Coast Guard, which has promulgated regulations establishing the methods by which rates are set.  See 46 C.F.R. Part 404.  It applies these methods through notice-and-comment rulemaking to determine the applicable rates.  The Coast Guard's stated goal is to set rates that "promote safe, efficient, and reliable pilotage service on the Great Lakes, by generating for each pilotage association sufficient revenue to reimburse its necessary and reasonable operating expenses, fairly compensate trained and rested pilots, and provide an appropriate profit to use for improvements."  Id. § 404.1(a).  In other words, the Coast Guard strives to account for "necessary" and "reasonable" expenses when setting rates to ensure that pilots associations can recoup those costs through sufficiently high revenue.

2

This case revolves around a 2016 regulatory overhaul of the rate-setting methodology. Until that overhaul, the Coast Guard used rate-setting methods promulgated in 1995. See Great Lakes Pilotage Methodology, 60 Fed. Reg. 18,366 (April 11, 1995). While this case turns on differences between the two sets of methods, they both take the same general approach to operating expenses. Under each set of regulations, pilots associations are responsible for providing a detailed accounting of expenses for the Coast Guard to consider in setting rates. See 46 C.F.R. § 404.2(a); 46 C.F.R. § 404.5(a)(1) (2015). The Coast Guard must then determine whether an expense is both "necessary" for providing pilotage services and "reasonable" in amount. 46 C.F.R. § 404.2(a); 46 C.F.R. § 404.5(a)(1) (2015). If an expense meets both criteria, it can be included when determining rates, meaning rates will be set higher to allow pilots associations to recoup the costs.

Both the 1995 and 2016 regulations provide the same general definition for "necessary" and "reasonable" operating expenses. An expense is necessary if it is directly related to pilotage services. 46 C.F.R. § 404.2(a); 46 C.F.R. § 404.5(a)(1) (2015). The amount of an expense is reasonable if it compares to similar expenses paid by others in the maritime or other industries, or when compared to Internal Revenue Service guidelines. 46 C.F.R. § 404.2(a); 46 C.F.R. § 404.5(a)(2) (2015).

B. Pre-2016 Rule

The 1995 regulation that governed rate setting said relatively little about legal expenses. It noted only that "[e]ach [pilots] Association must substantiate its expenses, including legal expenses." 46 C.F.R. § 404.5(a)(8) (2015). In applying the rule, the Coast Guard recognized legal fees among necessary and reasonable expenses, whether or not they were incurred in litigation against the U.S. government. In a 2003 interim rulemaking, the Coast Guard

3

responded to comments questioning the wisdom of recognizing legal fees as allowable expenses by explaining that it "reviewed all legal fees using the guidelines of necessity and reasonableness contained in [the 1995 regulation]," and approved "[o]nly reasonable and necessary legal fees[.]" Rates for Pilotage on the Great Lakes, 68 Fed. Reg. 69,564, 69,566 (Dec. 12, 2003). Under this framework, "[l]egal fees for litigation against the Government were allowed as long as there was no court proceeding in which there had been a finding of bad faith on the part of the pilot organizations." Id.

C. 2014 Litigation

In 2014, Plaintiffs in this case sued the Coast Guard over its pilotage rates. Another court in this district awarded them summary judgment and ordered supplemental briefing on an appropriate remedy. See St. Lawrence Seaway Pilots Ass'n v. U.S. Coast Guard, 85 F. Supp. 3d 197, 207–08 (D.D.C. 2015). Prior to that briefing, the parties settled and Plaintiffs dismissed the case. See Stipulation of Settlement and Dismissal, ECF No. 32, St. Lawrence Seaway Pilots Ass'n v. U.S. Coast Guard, 14-cv-392 (July 30, 2015). As part of that settlement, the Coast Guard paid $47,992 of the pilots associations' legal fees. Id. ¶ 5. The parties in this case do not dispute that the associations incurred an additional $75,049 in legal fees during that litigation.

D. 2016 Rule

In a 2016 Rule, the Coast Guard revamped its rate-setting methodology. See Great Lakes Pilotage Rates—2016 Annual Review and Changes to Methodology, 81 Fed. Reg. 11,908 (Mar. 7, 2016). Like its predecessor, the new methodology requires pilots associations to detail their expenses and obligates the Coast Guard to determine whether an expense is both "necessary" for providing pilotage services and "reasonable" in amount. 46 C.F.R. § 404.2(a)–(b). The new methodology also follows the same general rule for determining necessity and reasonableness.

4

Id. § 404.2(a). If an expense meets these criteria, it can be included in the expenses accounted for in the annual rates. With one important exception: Unlike its predecessor, the new Rule treats legal fees incurred in litigation against the U.S. government differently than other legal fees. Under the new regulation, "association [legal] expenses are recognizable except for any and all expenses associated with legal action against the U.S. government or its agents." Id. § 404.2(b)(6).

E. 2017 Rate Setting

In 2017, the Coast Guard engaged in a notice-and-comment rulemaking to set rates for the 2017 shipping season. See Great Lakes Pilotage Rates—2017 Annual Review, 82 Fed. Reg. 41,466 (Aug. 31, 2017). As is typical due to the practicalities of reporting and considering expenses, the rulemaking was based on expenses incurred three years prior, in 2014. The Plaintiffs in this case reported among their expenses the $75,049 of outstanding legal fees from their 2014 litigation and asked the Coast Guard to recognize these expenses for rate-setting purposes. Id. at 41,471. The Coast Guard declined, explaining that under 46 C.F.R. § 404.2(b)(6)—the provision newly promulgated in 2016—such fees are not includable. 82 Fed. Reg. at 41,471.

F. Procedural History

The procedural history of this case is more complicated than its substance. Plaintiffs filed this suit after promulgation of the 2017 rates, describing the action as "seek[ing] judicial review . . . of the Coast Guard's final rule setting Great Lakes pilotage rates for 2017." Compl. ¶ 1. Their Complaint challenged several aspects of the 2017 rates, including the exclusion of $75,049 in legal fees pursuant to 46 C.F.R. § 404.2(b)(6). But while the Complaint was

5

ostensibly about the 2017 rates, much of it focused on the 2016 Rule[1] and the process by which it was promulgated. See Compl. ¶¶ 12–16, 18–24. And Plaintiffs' prayer for relief explicitly asked the Court to "[v]acate 46 C.F.R. § 404.2(b)(6) to the extent that it provides for disallowance of expenses 'associated with legal action against the U.S. government or its agents.'" Id. at 15. By the time Plaintiffs moved for summary judgment, the Coast Guard had promulgated 2018 rates, and Plaintiffs indicated that the sole remaining issue was the exclusion of legal fees pursuant to 46 C.F.R. § 404.2(b)(6). See Pls.' Mot. Summ. J. at 2. Their summary judgment briefing focused on the 2016 Rule, concluding with a request that the Court vacate 46 C.F.R. § 404.2(b)(6). See generally id.; id. at 14. Following suit, the Coast Guard opposed that motion and cross-moved for summary judgment with a defense of the 2016 rulemaking. See Coast Guard Mot. Summ. J. at 7–11. While Intervenor-Defendants raised the issue of whether the 2016 Rule was properly before the Court, see Int.-Defs.' Opp'n at 8–10, much of their opposition to Plaintiffs' summary judgment motion likewise revolved around the 2016 Rule, see id. at 4–8.

The parties filed only the administrative record for the 2017 rulemaking, however. See Notice of Filing of Joint App'x of Record, ECF No. 23. While this record includes many of the same comments the pilots had made in 2016, it was not the formal administrative record of the 2016 rulemaking that the parties had briefed. The Court determined that it could not adjudicate the Plaintiffs' request to vacate 46 C.F.R. § 404.2(b)(6)—part of the 2016 Rule—without examining the record of that rulemaking. It thus ordered the Coast Guard to file the 2016

---

[1] While the 2016 rulemaking included a variety of other changes and a rate setting not at issue here, for ease, the Court refers to 46 C.F.R. § 404.2(b)(6) as the "2016 Rule" in this context.

administrative record, see Dec. 14, 2018 Minute Order, which it did, see Notice of Filing of Administrative Record, ECF No. 28.[2]

At a subsequent hearing on the parties' motions, Plaintiffs clarified that they seek only the vacatur of 46 C.F.R. § 404.2(b)(6) for the purpose of future rates, and that because the 2017 rates have been supplanted by 2018 rates, they seek no specific remedy stemming from the $75,049 in excluded fees that prompted this case. See Hr'g Tr. 12:7–13:3.

With those choppy procedural waters in our wake, this case is now ripe for resolution on a more straightforward issue: Did the Coast Guard promulgate 46 C.F.R. § 404.2(b)(6) in an arbitrary and capricious manner?

II. **Standard of Review**

Summary judgment is the proper stage for determining whether, as a matter of law, an agency action complies with the APA and is supported by the administrative record. Richards v. INS, 554 F.2d 1173, 1177 (D.C. Cir. 1977). Under the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Arbitrary and capricious review is "narrow," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), and precludes the Court from "substitut[ing] its judgment for that of the agency," Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Rather, the Court must determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation

---

[2] Accordingly, because this action seeks to vacate 46 C.F.R. § 404.2(b)(6), part of the 2016 Rule, the Court's references to the administrative record ("AR") refer to the 2016 record filed upon Court order.

marks omitted). Even if the agency did not fully explain its decision, the Court may uphold it "if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc., 419 U.S. 281, 286 (1974). The Court's review is limited to the administrative record, Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 160 (D.C. Cir. 2003), and the party challenging an agency's action bears the burden of proof, City of Olmsted Falls v. FAA, 292 F.3d 261, 271 (D.C. Cir. 2002).

III. Analysis

The pilots contend that the Coast Guard arbitrarily and capriciously enacted the 2016 Rule by not acknowledging a change in policy and failing to meaningfully respond to comments submitted. The Court agrees.

There is no dispute that the 2016 Rule changed the Coast Guard's policy on legal fees incurred against the government. The 2016 Rule and its predecessor took substantively identical approaches to defining "necessary" and "reasonable" operating expenses. But the 2016 Rule creates an exception to that approach, excluding a category of legal fees regardless of whether they otherwise meet the regulatory definition of "necessary" and "reasonable." See 46 C.F.R. § 404.2(b)(6). In practice, the old rule allowed pilots associations to include such fees among "necessary" and "reasonable" expenses recoupable in the rate-setting process, as the Coast Guard explicitly acknowledged in its 2003 interim rulemaking. Rates for Pilotage on the Great Lakes, 68 Fed. Reg. 69,564, 69,566 (Dec. 12, 2003). Upon adoption of the 2016 Rule, that is no longer the case if the fees were incurred in litigation against the U.S. government.

The Coast Guard did not acknowledge the change. The agency noticed the rule in a Notice of Proposed Rulemaking ("NPRM") describing a significant overhaul of rate-setting methodology. See Great Lakes Pilotage Rates—2016 Annual Review and Changes to

8

Methodology, 80 Fed. Reg. 54,484 (proposed Sept. 10, 2015). The NPRM explained that it would re-number the provision that "describes which pilot association expenses can or cannot be recognized as appropriate to recover through the charging of pilotage rates." Id. at 54,488. It indicated that the newly numbered provision—now 46 C.F.R. § 404.2—"would do the same thing [as the previous provision], and make no substantive changes except with respect to the recognition of pilot benefits as an element of pilot compensation." 80 Fed. Reg. at 54,488. Put simply, the NPRM stated explicitly that, except for a matter unrelated to legal expenses, the proposed methodology would not alter expense-recognition policies.

In response to the NPRM, the pilots commented that the new methodology would depart from past practice, citing the 2003 interim rulemaking. They further noted that legal fees are typically recognized as recoupable expenses in the maritime industry, explained that litigation against the U.S. government was sometimes necessary to ensure appropriate rates, and cited the outstanding fees from the 2014 litigation. See AR 61, 98–100. In its final rulemaking, the Coast Guard summarized these comments, noting that one group "said our proposal was contrary to past Coast Guard practice, which allowed those fees so long as there was no finding of bad faith on the part of the pilots," and another group "said disallowing fees is an arbitrary and capricious departure from past Coast Guard practice and an illogical departure from customary practice in other industries." 81 Fed. Reg. at 11,922. The Coast Guard's full response as relevant to these comments was:

> We disagree. The U.S. Government, through the Coast Guard, is the pilots' regulator, and therefore, it is inappropriate for the Coast Guard routinely to approve any legal costs for actions against the Government or its agents. We note that when court-ordered to do so, as we were as part of the settlement ending the 2014 litigation, we do pay the opposing party's litigation costs.

Id.

These facts are clear and fatal to the new rule's treatment of legal fees. "A central principle of administrative law is that, when an agency decides to depart from . . . past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it." Am. Wild Horse Pres. Campaign v. Perdue, 873 F.3d 914, 923 (D.C. Cir. 2017). A lack of such analysis "renders the agency's action arbitrary and capricious." Lone Mountain Processing, Inc. v. Sec'y of Labor, 709 F.3d 1161, 1164 (D.C. Cir. 2013).

Here, the Coast Guard failed to acknowledge the change in the first instance, when it noticed the proposed rulemaking. To the contrary, it explicitly indicated that the only substantive change was unrelated to legal fees. Even when alerted to the change, the Coast Guard did not acknowledge it in the final rulemaking, saying only "We disagree," and tersely explaining its view of why it should not recognize such expenses.

The Coast Guard contends that "We disagree" was not meant as a denial of changed policy, but rather a response to criticism of the substance of the policy. Hr'g Tr. 29:18–30:9. Perhaps. But even then, nothing in the record evinces a straightforward acknowledgement of a changed course. When pressed at the hearing, the Coast Guard urged the Court to consider its summary of the pilots' comments as an acknowledgment of change. Id. 31:15–32:2. Even with this generous reading, in the face of an NPRM that explicitly discounted a change in policy, a summary of a comment in the final rule would not satisfy the agency's responsibility to affirmatively acknowledge change. Cf. Agape Church, Inc. v. FCC, 738 F.3d 397, 412 (D.C. Cir. 2013) ("[A]n agency cannot bootstrap notice from a comment[.]" (internal marks and citation omitted)).

The Coast Guard similarly falters in emphasizing that it properly noticed the new regulation, that Plaintiffs understood the proposal and submitted comments addressing it, and

that the Coast Guard responded to these comments with an explanation of its policy. See Coast Guard Mot. Summ. J. at 7. This misses a key point: It is the *Coast Guard's* responsibility to "indicat[e] that prior policies and standards are being deliberately changed, not casually ignored." Lone Mountain Processing, Inc., 709 F.3d at 1164. The fact that Plaintiffs were able to identify the change in policy does not absolve the Coast Guard of its obligation to engage in reasoned decision-making, which starts with acknowledging a deliberate change.

The Coast Guard points to FCC v. Fox Television Stations, Inc., 556 U.S. 502 (2009), for the proposition that an agency is free to change its mind and need not demonstrate that a newly adopted policy is better than a prior policy. Coast Guard Reply at 5. True enough, but Fox also requires that the agency "display awareness that it *is* changing position." 556 U.S. at 515. Moreover, Fox does not excuse the Coast Guard from adequately explaining its reasoning. Id. The pilots commented that litigation against the U.S. government was sometimes necessary to ensure that they are appropriately compensated, that analogous industries recognize such costs, and that exclusion of the $75,049 would pose a "real issue for the pilots" because of the "magnitude of those fees." AR 100; see generally AR 61, 98–100. The Coast Guard's response did not address these comments beyond indicating that recognizing the expenses would be "inappropriate" and noting that it pays fees when ordered by a court.[3]

---

[3] The Coast Guard invokes the principle that "a court should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Coast Guard Mot. Summ. J. at 10. But this principle has limits, and there is no reading of the Coast Guard's explanation that would sufficiently address the pilots' comments or glean the reasons for change. Indeed, in their briefing, the Coast Guard and the shipping companies explain the rule differently. The Coast Guard suggests that it defines the "reasonableness" criterion for this category of legal fees as the amount paid in settlement or by court order. See id. at 7–8. The shipping companies, meanwhile, suggest that the reasoning reflects a policy choice in which the Coast Guard has "*excepted* legal expenses . . . from determinations of necessity and reasonableness" altogether. Int.-Defs.' Opp'n at 6.

Both the Coast Guard and the shipping companies devote much of their briefing to explaining why the new rule is a wise policy choice—explanations that do not appear in the record itself. See Motor Vehicle Mfrs., 463 U.S. at 50 ("[C]ourts may not accept . . . *post hoc* rationalizations for agency action."). The Coast Guard's contention that the policy reflects "a rational[] position, not an arbitrary and capricious one[,]" Coast Guard Mot. Summ. J. at 7, conflates the virtue of the policy with the procedures used to enact it. This case is about latter, not the former. The Court takes no position on the relative wisdom of the policy. A rule excluding legal fees incurred against the U.S. government may well be a rational policy. But the process by which the Coast Guard enacted it was arbitrary and capricious. The Court will therefore grant the pilots associations' motion for summary judgment.

A quick word on remedy: Much of the hearing focused on this issue because Plaintiffs until that point had not clarified precisely the relief they sought. Their Complaint sought both the vacatur of 46 C.F.R. § 404.2(b)(6) and an order remanding the 2017 rates to the Coast Guard with instructions to include the $75,049 in legal fees incurred in 2014. See Compl. at 15. No party briefed the remedial issue, and the Court had some concern about the consequences for rates already paid. See Am. Great Lakes Ports Ass'n v. Zukunft, 301 F. Supp. 3d 99, 103–04 (D.D.C. 2018) (noting disruptive effect of upending already-paid pilotage rates); St. Lawrence Seaway Pilots Ass'n, 85 F. Supp. 3d at 208 (noting remedial difficulty of ordering pilots' entitlement to future payments and recognizing that remedial decision regarding 2014 rates likely impacts the propriety and validity of the 2015 rates).

At the hearing, Plaintiffs clarified they seek a vacatur of 46 C.F.R. § 404.2(b)(6) to prevent the Coast Guard from excluding legal fees in future rate settings, and do not seek to disturb any past rates. See Hr'g Tr. 12:7–13:3. With the benefit of this clarification, the

remedial decision is simple: Vacatur is the presumptive remedy for arbitrary and capricious agency action, see 5 U.S.C. § 706(2) (A court shall "set aside agency action . . . found to be . . . arbitrary [and] capricious"), and there is no risk of disruption. The Court will therefore vacate 46 C.F.R. § 404.2(b)(6).

### IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Summary Judgment and deny the Coast Guard's Motion for Summary Judgment. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: February 19, 2019